J-A31006-15
J-A31007-15

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF N.K.J.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R., FATHER | : | |
| | : | No. 991 MDA 2015 |
| | : | |

Appeal from the Order entered May 13, 2015
In the Court of Common Pleas of York County
Orphans' Court Division at No. 2015-0027
CP-67-DP-169-2013

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF N.K.J.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R., FATHER | : | |
| | : | No. 1007 MDA 2015 |
| | : | |

Appeal from the Order entered May 7, 2015
In the Court of Common Pleas of York County
Orphans' Court Division, at No. 2015-0027
CP-67-DP-000169-2013.

BEFORE: PANELLA, J., LAZARUS, J., and PLATT[*], J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 02, 2015**

In these related appeals,[1] which we have consolidated for disposition,

A.R. (Father) appeals the orders of the Court of Common Pleas of York

County, entered May 13, 2015, and May 7, 2015, that, respectively,

---

[*] Retired Senior Judge assigned to Superior Court.

[1] From our examination of the record, it appears that Father filed his appeal from the court's decision to change Child's goal at 1007 MDA 2015, and from its decision to terminate his parental rights at 991 MDA 2015. By order of Court, the parties have each filed a single brief as we ordered the appeals listed consecutively.

terminated his parental rights to his daughter, N.K.J.R. (Child), born in July 2013, and changed Child's permanency goal to adoption. We affirm.[2]

York County's Office of Children, Youth and Families (CYF or the Agency) filed an application for emergency protective custody of Child on July 31, 2013, after it received a referral, on June 28, 2013, that Child had tested positive for drugs at birth and was experiencing symptoms of withdrawal. Father was incarcerated at the time Child was born and remained incarcerated at the time of the hearing in this matter. Child's mother, S.W. (Mother), admitted to drug use while she was pregnant with Child.

CYF filed a dependency petition on August 6, 2013. The court adjudicated Child dependent under section 6302 of the Juvenile Act, on August 12, 2013, and, with the agreement of Mother and Father, awarded physical and legal custody of Child to CYF. CYF placed Child in kinship care with a goal of reunification.

At the time of the combined change of goal and termination hearing, Child had been dependent and in placement for approximately twenty-one months and CYF had prepared five Family Service Plans (FSP) for the family.

---

[2] The court also terminated the parental rights of Child's mother, S.W. She did not appeal that termination.

CYF forwarded all of those FSPs to Father, who never objected to any of the goals established in those FSPs except for the plan dated May 11, 2014.[3]

Because of Mother's cooperation with CYF, the court entered an order on October 23, 2013, by which Child remained dependent but was returned to the care and custody of Mother. Father remained incarcerated.

In a permanency review order entered January 7, 2014, the court found that Father had made progress toward his FSP goals, and that CYF had made reasonable efforts to finalize the Permanency Plan. The court awarded legal and physical custody of Child to Mother.

In an order entered April 10, 2014, the court, upon petition from CYF, removed Child from Mother, and once again awarded legal and physical custody to CYF. CYF placed Child in foster care. Father remained incarcerated.

The court entered a permanency review order on June 23, 2014, in which the court found that Father was not compliant with the permanency plan, and that he had made no efforts toward alleviating the circumstances that necessitated the original placement of Child. The court affirmed legal

---

[3] When CYS supervisor, Cathy Lyman, was asked if Father had objected to any of the FSPs she replied:

> Father did return a – the signature page on the – May 11, 2014 [FSP], saying that he wanted to appeal. There are instructions on how to appeal attached to every family service plan, and we never received anything from [Father] in that regard.

N.T. 5/17/15, at 40-41.

and physical custody with the Agency. The court also found that CYF had made reasonable efforts to finalize the permanency plan.

In a permanency review order entered December 9, 2014, the court found minimal compliance by Father with the FSP. According to the court, Father had made no efforts toward alleviating the circumstances that necessitated the original placement. Legal and physical custody of Child remained with CYF.

On March 2, 2015, CYF filed the petition to change Child's permanency goal to adoption under section 6351 of the Juvenile Act, and a petition to involuntarily terminate Father's parental rights under section 2511 of the Adoption Act. The court held the hearing on the goal change/termination petitions on May 7, 2015.

Father has been incarcerated continuously since Child was born. He was found guilty of the federal crime of possession with intent to deliver on April 20, 2015. Father was incarcerated at Adams County Prison until December of 2014, when he was transferred to Perry County Prison, where he remained at the time of the hearing.

Father expects to be relocated to a federal correctional institution, but is not sure of the date of his transfer or the location of the facility to which he will be transferred. ***See*** NT 5/7/15, at 46-47, 109. Father testified that he had not been sentenced, but the guideline minimum sentence is 86 to 120 months and the maximum sentence is life. ***See id***., at 109-111, 117-

119. Father testified that he expects a minimum release date on a day in October 2019. *See id*., at 111-113. Father's release in October 2019 is pure speculation and based upon myriad variables.

Father has been consistent in visitation with Child. The Adams County Prison permitted Father to have contact visits with Child. At the Perry County Prison, where Father is now incarcerated, all visits are through glass. Child currently visits approximately twice a month.

Since the adjudication of dependency, CYF has offered limited services to Father because of his incarceration. CYF representatives met with Father in prison to ascertain possible family resources for Child. CYF arranged for Father to participate at permanency review hearings. There were no services that Father requested that CYF was unwilling or unable to provide. *See id*., at 65-66. CYF's file does not indicate that Father sent cards or letters to Child. *See id*., at 79.

Child is bonded with her foster parents and her extended foster family including other children in the foster home. *See id*., at 56, 63. Child considers her foster parents to be her parents. *See id*., at 63-65. There would be no negative impact upon the minor child if Father's parental rights were terminated and pre-adoptive resources have been identified for Child. *See id*., at 75. Child does not have any special needs and appears to be developmentally on target. Child is tracked by early intervention, but receives no specialized services. *See id*., at 74-75.

The court entered its order terminating Father's parental rights on May 13, 2015, and its order changing Child's goal to adoption on May 7, 2015. Father timely filed his notices of appeal and statements of errors complained of on appeal on June 8, 2015.[4]

Father raises the following question on appeal.

> I. Whether the trial court committed an error of law by involuntarily terminating [Father's] parent [sic] rights as they determined that sufficient evidence of record existed to support said finding pursuant to 23 Pa.C.S.A. Section 2511 and 2512 when rendering a decision?

Father's Brief, at 5.

In his statement of question involved, Father does not specifically challenge the court's determination pursuant to any particular subsection of section 2511 of the Adoption Act, nor does he specifically challenge the court's change of Child's permanency goal to adoption under section 6351 of the Juvenile Act. We could consider Father's challenges to section 2511(b) and to the goal change waived. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that, a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). In *In the Interest of T.L.B.*, ___ A.3d ___, 2015 WL 6653318 (Pa. Super., Filed November 2, 2015) this Court declined to find that the appellant had waived

---

[4] *See* 1 Pa.C.S.A. § 1908 (regarding computation of time).

an issue, where it could have been stated with more specificity, and the court opinion aptly addressed the issue. *Id*., at *3 (citing **Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (declining to find waiver for failure to adequately develop a sufficiency of the evidence claim)). We too decline to find waiver.

Our case law provides that we should address section 2511(b) after we address section 2511(a). **See In re C.L.G.**, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (stating that we should address section 2511(b) only after determining that the parent's conduct warrants termination of his parental rights under section 2511(a)). In its Opinion Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), entered on June 12, 2015 (TCO), the court addressed the sufficiency of the evidence under section 2511(a) and (b) of the Adoption Act, as well as to change the permanency goal for Child under section 6351 of the Juvenile Act. Thus, pursuant to our case law, we will review the court's ruling as to each of these statutory sections.

Our standard of review for termination is as follows.

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated that

>> [w]here the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>>
>> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

>> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007) (citation omitted).

The court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). In order to affirm the termination of parental rights, this Court need only agree with any *one* subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Section 2511(a)(1) and (b) provide, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

A party seeking termination of a parent's rights bears the burden of proving the grounds by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental

responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has

Held that

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988) (citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re N.M.B.***, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

In regard to incarcerated persons, our Supreme Court has stated that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012).

. . .

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). ***See e.g. Adoption of J.J.***, [511 Pa. at 605], 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); ***[In re:] E.A.P.***, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*Id*., at 830-831.[5]

The Adoption Act provides that a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Adoption Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. ***See In re E.M.***, 620 A.2d 481 (Pa. 1993). However, this Court has held that the court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. ***See In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008).

The court first addressed the question of the change of Child's goal.

> [Father] is admittedly not a resource for [Child] at this point in time and cannot be available to be a resource until, optimistically, October of 2019, but possibly never. Reunification with [Father] cannot be achieved in a reasonable amount of time. Therefore, a change of the court-ordered goal is necessary to achieve permanency for [Child]. The feasible goals at this point, considering the age of [Child] and the circumstances of this case, are adoption and placement with a fit and willing relative. The [c]ourt recognizes that [Father] objects to placement of [Child] with his brother – although [Father] was the individual who first offered that individual as a resource – but his brother is not the only relative proposed. In fact, [Father] himself has recommended placement with his sister

---

[5] In ***In re Adoption of S.P.***, 47 A.3d 817, 822 (Pa. 2012), the Court cited its decision in ***In re: Adoption of McCray***, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time. ***See id***., at 828. ***S.P.*** was written in the context of section 2511(a)(2), but applies as well to section 2511 (a)(1).

who resides in Kentucky and an ICPC[6] has been initiated. The Adoption and Safe Families Act requires the court to set feasible goals to establish permanency for [C]hild. This [c]ourt, therefore, respectfully requests that the Superior Court affirm its Order changing [Child's] goal so that placement of [Child] with a safe, permanent resource can be pursued.

TCO, at 2.

At a permanency hearing, the court must consider the following factors.

> **(f) Matters to be determined at permanency hearing.--** At each permanency hearing, a court shall determine all of the following:
>
> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.
>
> (5) The likely date by which the placement goal for the child might be achieved.
>
> (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
> . . .

42 Pa.C.S.A. § 6351(f)(1)-(5.1).

The court's findings make clear that, given Father's incarceration, Child's placement in foster care is entirely appropriate, (1). Father's

---

[6] ICPC stands for, "Interstate Compact on the Placement of Children"

incarceration prohibits him from complying with CYF's permanency plan, (2). Father has made little, if any progress toward alleviating the circumstances that necessitated Child's placement, (3). Child's goal of reunification was inappropriate and unfeasible, (4). The likely date by which Child might be reunited with Father was at some time in October of 2019 and, by Father's admission, he may serve a life sentence and never be reunited with Child, (5). CYF has done all that it could do to assist Father in completing the permanency plan, (5.1).

To continue to attempt to reunite Child with Father would mean that Child would remain in foster care for at least the next four years—and possibly many more. Our examination of the record reveals that the court did not err or abuse its discretion when it changed Child's goal to adoption.

Next, Father challenges the termination of his parental rights pursuant only to section 2511(a)(1), and claims "[T]here was not clear and convincing evidence that Father showed a settled purpose to relinquish his parental claim or that in the six months prior to the termination petition or that Father failed to perform parental duties." For the reasons that follow, we disagree. We quote the court's analysis of section 2511(a)(1), with approval.

> This [c]ourt notes that "[t]he statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that a parent must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have his parental

rights terminated." **In re Z.P.**, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citing **In re B.L.L.**, 787 A.2d 1007, 1013 (Pa. Super. 2001)).

This [c]ourt found that [Father] accepting visits from [Child] is not sufficient to sustain her and [Father] has not performed sufficient parental duties to overcome that finding in order to decline to terminate his parental rights pursuant to Section 2511(a)(1). At the time of the hearing related to the petitions at issue, [Child] had been alive for approximately 6678 days and had spent only thirty hours cumulatively with [Father] during that time. Those thirty hours constitute just over one day of [Child's] entire existence. [Child] has physical needs that [Father] has made no attempt to meet since [Child] was removed from the care of his sister in 2013. Notwithstanding his reported income, he does not provide for [Child]. Testimony presented at the termination is that he last provided a gift to [Child] in July 2014, almost a year prior to the termination proceedings, and a Christmas card at some point in [Child's] life. Despite [Father's] position that he has somehow aided in [Child's] development, the evidence does not support his claim.

TCO, at 2-4.

Father has never cared for or provided for Child in any meaningful way. The court did not err or abuse its discretion in terminating Father's parental rights pursuant to section 2511(a)(1).

Next, proceeding to analyze section 2511(b) under **In re C.L.G.**, we also approve of the court's analysis of Child's best interest and welfare pursuant to section 2511(b).

Although [Father] does not state explicitly an objection to thet [c]ourt's determination regarding 23 Pa.C.S.A. §2511(b), [Father] does note that [Child] refers to him as "daddy" and maintains contact with [Child] through visits, currently through glass. However, [Father] has never served as a parental figure to [Child]; he has never tucked [Child] into bed at night; he has never attended a medical appointment; and he has never bathed her. He has not provided for [Child's] well-being. It is in

- 15 -

> [Child's] best interest to find her a safe, stable permanent home with a parental figure who can provide for her. It cannot be that [Child] is supposed to wait in limbo until [Father] finishes serving his sentence, which, according to [Father], although it could be as little as seven years, could potentially be a life sentence. The [c]ourt will not ignore the uncertainty of [Father's] incarceration simply because [Child] refers to him as "Daddy" and offers him some affection.

> As sufficient, clear and convincing evidence exists on the record to support its determination, this [c]ourt respectfully requests that its determinations pursuant to 23 Pa.C.S.A. §[§]2511(a)(1), (a)(2), and (b) be affirmed.

*Id*., at 5.

There is no evidence in the record of a bond between Father and Child. Where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *See In re Adoption of J.M.*, 991 A.2d 321 (Pa. Super. 2010). The court did not abuse its discretion when it determined that it was in Child's best interests to terminate Father's parental rights.

Accordingly, for the reasons stated, we affirm the orders of the Court of Common Pleas of York County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and changed Child's goal to adoption.[7]

Orders affirmed.

---

[7] As we have affirmed the termination of Father's parental rights, we need not address his challenge to section 2512 of the Adoption Act.

- 16 -

J-A31006-15
J-A31007-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015